The trial judge rejected the demands of plaintiff. We think that his judgment is correct.

For these reasons, the judgment appealed from is affirmed.

---

(JII So. 72)

No. 28231.

STATE v. SOLETO.

(Nov. 29, 1926. Rehearing Denied Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. Witnesses &larr;393(2)—Refusal to order reading of state witness' testimony on former trial held erroneous.

Refusal to order stenographer to read notes, from which record on former trial, by which defendant sought to impeach state's witness, had not been written up, *held* erroneous.

2. Criminal law &larr;1170½(1)—Refusal to order reading of notes of state witness' testimony on former trial held harmless error.

Refusal to order stenographer to read notes of state witness' testimony on former trial for impeachment purposes *held* harmless error, where his testimony was same on both trials.

Appeal from Criminal District Court, Parish of Orleans; N. E. Humphrey, Judge.

Peter Soleto was convicted of grand larceny, and he appeals. Affirmed.

Thomas G. Moran, of New Orleans, for appellant.

Percy Saint, Atty. Gen., Henry Mooney, Dist. Atty., and Chandler C. Luzenberg, Asst. Dist. Atty., both of New Orleans, for the State.

LAND, J. After a mistrial, the defendant was tried and convicted of the crime of grand larceny, and has appealed.

Defendant was jointly indicted with Rosario Palmisano for the theft of a Ford sedan of the value of $850.

[1, 2] On his second trial, police officer William Peterson appeared as a witness for the state, and, on cross-examination, was interrogated by counsel for defendant as follows:

"Q. You say you followed this car that Soleto was in and jumped on the running board?

"A. I was on the corner of Bienville and Bourbon streets, *and when Palmisano came along first and I told him to pull on the side.*

"Q. Did you testify to that on the first trial?

"A. I did."

At this juncture counsel for defendant called for the record on the first trial. It appears that the original record had not been written up from the shorthand notes of the stenographer, as the first trial had resulted in a mistrial. For this reason, the trial judge refused to order the stenographer to read his notes, as it would delay the court.

A bill of exceptions was reserved to the court's ruling, and the testimony of the state's witness on the first trial was made a part of and annexed to the bill.

The relevant part of this testimony is as follows:

"Q. You say you grabbed Soleto?

"A. No; I jumped on the running board and demanded that he stop the car he had just stolen.

"Q. Had not Palmisano gone off when all of this happened?

"A. No; *he drove to Bourbon and Bienville and hollered to Soleto to come on, and Soleto came on behind him. When Palmisano got to the corner, I told him to turn on the side and stop,* and Soleto tried to get by me and turned against traffic into Bienville street going towards the river, and when Soleto tried to pass me I jumped on the running board of his car, and he shot towards the river against traffic, and Palmisano turned his car and started towards Rampart street."

From a comparison of the statement made by the police officer on the second trial with his statement on the first, it is clear that there is no conflict between them.

On both trials, the witness testified that Palmisano came along first, and that he told him to pull his car to the side of the street.

While the ruling of the judge a quo was erroneous in denying to defendant an opportunity to impeach the state's witness, by the production of the original record, it is apparent that the ruling is harmless error, as the testimony of the police officer was the same on both trials, and he could not have been impeached had the record been produced at the trial.

Judgment affirmed.